POSTMASTER GENERAL v. LATHROP.
See Case No. 11,308.

POSTMASTER GENERAL (LOCKE v.). See Case No. 8,441.

## Case No. 11,309.

### POSTMASTER GENERAL v. MUNGER et al.

[2 Paine, 189.] [1]

Circuit Court, S. D. New York. [2]

POSTMASTER'S BOND — SECOND BOND WITH NEW SURETIES — JOINT LIABILITY OF SURETIES — EFFECT OF ACT INCREASING RATES OF POSTAGE.

1. The defendant gave a bond as surety for a postmaster, conditioned for the faithful discharge of his duties, and that he should pay over all moneys which should come to his hands for postages to the postmaster general. Afterwards, the postmaster continuing in office, another bond, with different sureties, was taken with the same condition. At the time of the taking of the second bond, a balance was due from the postmaster for postages; but payments were subsequently made by him, and credited in his general account, sufficient to extinguish it. In an action against the sureties on the first bond for postages not paid over, it was held that their liability did not cease upon the giving of the second bond for defaults thereafter incurred. That the second bond was not a substitute for or extinguishment of the first, but additional security; and that equity would consider the two sets of sureties as jointly responsible for defaults occurring after the giving of the second bond.

2. Acts of congress had been passed subsequently to the giving of the bond increasing the rates of postage, and, consequently, the responsibility of the sureties. But it was held, that as the undertaking of the sureties was general that all postages should be paid over, and referred to no particular act explaining or limiting the rate of postage, and was not taken under any law defining its extent and operation, the sureties were not discharged. It would have been otherwise had the acts of congress enlarged the powers of the postmaster, or superadded any new duties whereby he was made the receiver of other moneys than for postages.

[Cited in U. S. v. Gaussen, Case No. 15,192; U. S. v. M'Cartney, 1 Fed. 107; Chadwick v. U. S. 3 Fed. 756.]

[Error to the district court of the United States for the Southern district of New York.]

The action in the district court was founded on a bond bearing date the 12th of February, 1812, in the penalty of $500, conditioned for the faithful discharge of the duties of

[1] [Reported by Elijah Paine, Jr., Esq.]

[2] [Date not given. 2 Paine includes cases from 1827 to 1840.]

postmaster by David Nott, and to pay over to the postmaster-general all moneys that should come to his hands for postages. deducting his commissions and such other allowances as by law he was entitled to receive. The breach assigned and relied upon at the trial was, that Nott had neglected and refused to pay over large sums of money which he had received as postmaster; and upon the trial it was shown, that upon the settlement of his accounts, a balance exceeding the penalty of the bond was found due from him.

The principal point in question upon the trial was, as to the effect and operation of a subsequent bond given by Nott, with other sureties. upon the liability of the sureties in the bond now in question.[3] This second bond bears date the 25th of December. 1818, and is in the penalty of $1,500, with a condition in all respects like the former. Nott continued in office until December, 1820. When the second bond was given, there was a balance of about $772 due from Nott; but by subsequent payments made by him and credited on his general account, if applied. as the defendants contend they ought to be, to this balance, there is no breach of the condition of the bond shown, provided the responsibility of the defendants ceased with the giving of the new bond; and whether it did or not, is the only real question now to be considered.

Upon the trial, the judge charged the jury: "That the taking by the postmaster-general of the second bond, was, under the circum-

[3] The third obligor's · taking a bond of indemnity and a mortgage from the first signers of the bond, has no effect on his liability. Rutledge v. Greenwood, 2 Desaus. Eq. 389. The circumstance of one obligor in a bond making payment, and being resorted to by the creditor, raised a strong presumption that he was a principal in the bond; while the circumstance of another obligor not making payments, and not being called upon for them, raises a presumption that he was only a surety. Doughty v. Bacot, 2 Desaus. Eq. 546. A. is indebted to D., F. & Co. by bond. A. dies, and at the sale of his estate by his executors. F., the acting partner of D., F. & Co., buys a slave. The amount of the purchase for the slave was held a good discount against the bond. Rose v. Murchie. 2 Call. 409. Where a bond given to one man is for the benefit of another, without being assigned to him, although the obligor has notice of the fact. he is not bound to pay any other than the obligee, unless he shall be indemnified for so doing; and payments made to the obligee are good. Morton's Adm'r. v. Fox, 4 Bibb. 392. A bond given by one partner for a simple contract debt due from the. partners to a creditor, and accepted by him, is, by operation of law, a release of the other partner, and an extenuation of the simple contract debt at law and in equity. Id. Where N. sells out a newspaper establishment to W. and T.. and by bond and covenant stipulates not to set up another paper within a certain time and distance, and N. afterwards buys T.'s moiety, and becomes joint proprietor with W., the remedy at law against N. upon the bond and covenant is gone. Noah v. Webb, 1 Edw. Ch. 604. General indulgence given by the creditor to the first signer in the bond will not release the other obligors. even if they were mere sureties. Rutledge v. Greenwood. 2 Desaus. Eq. 389. Indeed, there must be a new agreement varying the terms of the contract, and extending the time of payment to work the effect of releasing the surety. A demand of the surety to sue the principal shall not release the surety if the creditor offers to sue all the obligors. and the surety declines that. Id. A bond given by trustees to execute a marriage settlement was held to be avoided by a defeasance made at the same time the trustees. the wife being ignorant of it, though it appeared that the inducement to the husband's executing the bond after marriage, was to avoid the confiscation laws. Wilson v. Wilson, 1 Desaus. Eq. 219. A bill was filed to set up a bond and mortgage alleged to have been lost by the obligee in his lifetime. Defendant admitted their execution, but insisted they were not given for a valuable consideration, but to cover his property from his creditors, of which the obligee had given him an acknowledgment which he had lost. The weight of evidence was in support of this, and also of the obligee's declarations to the same effect. The court applied the maxim, "melior est conditio possidentis," and would set up the bond and mortgage. Lequeux v. Oliver, 3 Desaus. Eq. 535. If a bond is given without any consideration. but to be used as an article of traffic, to raise money. the bona fide purchaser thereof, though at a large discount, without notice of the purpose for which it was executed, is entitled to recover the full amount. Hansbrough v. Baylor, 2 Munf. 36. A bond securing a provision for a woman who had been seduced by the obligor, given after cohabitation determined. is good, although the obligor was married when the connection commenced. Barb. Dig. [Ky.] 282. A bond may be sold for much less than its nominal amount. and such sale will be enforced in equity as well as at law, if no fraud or usury appear in the transaction. Kenner v. Hord, 2 Hen. & M. 14; Hansbrough v. Baylor. 2 Munf. 36. If the vendee of land discover a paramount title. and, without conviction or suit. obtain the bond of his vendor for an agreed sum as an indemnity for the anticipated loss, the consideration is sufficient to uphold the bond. Butler v. Triplett, 1 Dana. 154. The penalty of a bond conditioned for the payment of money. is to secure payment of the whole of the condition; and any part of it remaining unpaid is a forfeiture of the penalty. Therefore, the obligee may recover the balance of the condition with interest. although that sum, when added to payments previously made, would exceed the penalty. Smith v. Macon. 1 Hill [S. C.] 339. Upon a money bond given by a principal debtor. the obligor is both legally and equitably liable for the whole amount of the principal and interest secured by the condition of the bond, although such amount exceeds the penalty of the bond. Mower v. Kip, 6 Paige, 88. If a husband and wife enter into a bond (not stipulating to pay out of the wife's separate estate) for the payment of the wife's debt, while she has a separate estate by antenuptial agreement, chancery will subject such separate estate to the payment of the bond. Forrest v. Robinson, 4 Port. [Ala.] 44. If a claimant give bond for the trial of the right to property levied on. and the issue is decided against him. he has a right to surrender the property in discharge of his bond; and if. during the pendency of such issue, the property be taken out of his hands by an older execution. this operates as a discharge of his bond, and chancery will enjoin the plaintiffs in the junior execution. from enforcing their judgment at law, obtained against the claimant on the trial of the right of property. Ferriday v. Selcer, Freem. Ch. [Miss.] 258. Where an ordinary appointed a guardian of an infant, and took a guardianship bond, with two sureties. and P., one of the sureties. afterwards applied to be released, and the ordinary. at the instance of P.. and the guardian, but without the knowledge or consent of the other surety, ran his pen through P.'s signature to the bond, and permitted a third person. as P.'s substitute, to sign and seal it: held. that neither P. nor his co-surety was discharged in

stances above stated, a waiver in law of all right to proceed on the first bond for postages which accrued and were received by said Nott subsequent to the date of the second bond. That the sureties in the first bond ceased to be liable, from that date, for any defalcation or neglect of duty on the part of Nott after that date." To this opinion of the court, a bill of exceptions was duly taken, and the cause is brought here by writ of error.

Upon the argument of this writ of error, the discussion on the part of the defendants was directed principally to an examination of the true import of the direction given by the court to the jury: whether the opinion of the judge was that the legal effect and operation of the second bond was, per se, a discharge of the sureties in the first bond from all responsibility, for defaults of the postmaster, incurred after the giving of the second bond; or whether the particular circumstances in evidence in this case did not show that the postmaster-general had, in point of fact, waived all claim upon the sureties in the first bond for such default. The latter is the construction of the charge contended for on the part of the defendants; and the correctness of the former, although not expressly abandoned, was not much insisted upon.

THOMPSON, Circuit Justice. I cannot concur with the defendants' counsel in his

---

equity, from his liability to the infant, and that P.'s substitute was not liable. Hill v. Calvert, 1 Rich. Eq. 56. A mere nominal obligee has no authority, as obligee, to destroy the interests of the true owner of the bond. Id. If a bond be lost, whether the acceptance of a negotiable instrument under seal from the principal obligor, expressly in payment of it, be a satisfaction in law or not, the obligee cannot recover in equity on the lost bond against the principal obligor or his surety, contrary to his agreement. Smitherman v. Kidd, 1 Ired. Eq. 86. If a vendor receive, in payment for the sale of land, the bond of a third person, made payable to himself, which is afterwards altered by his assent, so as to destroy it at law, he cannot have relief in equity against the obligor, although he was ignorant of the legal effect of altering the bond. Nor can he, or his assignee, who purchased the bond with full knowledge of the legal objections to it, have any relief in equity against the vendee who gave it payment, though the latter made the alteration in the bond and represented it to be good. Ryan v. Parker, 1 Ired. Eq. 89. The liability of the obligors in a bond of indemnity, arises exclusively out of the contract set forth in the bond, and its extent is thereby determined. Where a bond, therefore, was conditioned to indemnify J. M. B., his heirs, &c., "from all loss and injury, damages, costs and charges that shall, or may at any time hereafter occur to him, or be incurred by him, his heirs, &c.," by reason of his liability on certain promissory notes, it was holden by the court, that he was not entitled to any remedy, either at law or in equity, until the contingency had happened on which his right of action was to accrue, until, according to the terms of the bond, he had sustained some injury, incurred some loss, or been damnified by the payment of costs and charges, on account of the obligor's failure to discharge the debts specified. Hoy v. Hansborough, Freem. Ch. [Miss.] 533. A covenant to indemnify against a debt is not necessarily a covenant to pay it. The obligors may take up and cancel the original evidence of debt by which the obligee is bound, and substitute new liabilities, or may interpose some legal defence to the suit of the creditor, and defeat a recovery. In either of these cases the condition of the bond would be fully complied with. Id. To recover on a mere bond of indemnity, actual damage must be shown. If the indemnity be against the payment of money, actual payment must, in general, be proved; mere legal liability to pay is not sufficient. The rule would be different if the covenant were against a liability to pay. Id. Where the purchase of land is the alleged consideration of several bonds, the contract is so entire that if the consideration be shown to be insufficient by any one defendant, such defence will enure to the benefit of all the others, even as against whom the bill might otherwise have been taken pro confesso. Walsh v. Smyth, 3 Bland, 16. But where there is a ground of relief available, by all the plaintiff's obligors, any of them may waive the benefit of it without affecting the others. Id. 25. Where the heir being bound by bond in respect of assets descended, pays the debt, he may be reimbursed out of the personal estate. Tessier v. Wyse, 3 Bland, 41. A bond creditor, the heir being bound, may at his election sue either the heir or executor at law, even although there may be a sufficiency of personalty. Id. 40. On a sale under a decree, the bonds taken for the purchase-money may be assigned, in satisfaction to those entitled to the proceeds of the sale. Kilty v. Quynn, 3 Bland, 213, note. Where a man by writing, under seal, binds himself and his heirs for the payment of money, his real estate, in the hands of his heirs, is liable at common law to be taken in execution. Coombs v. Jordan, 3 Bland, 301. If the consideration of a bond be against law, the obligor may make that defence at law, and can have no claim on that account for the interposition of a court of equity. Moore v. Anderson, 1 Ired. Eq. 411. The time specified for the payment of a bond may be enlarged by parol. Vanhouten v. McCarty, 4 N. J. Eq. 141. If a bond be executed pursuant to the direction of a feme covert, by her trustee, in his own name, her separate estate may be charged with the money due on the bond. Leaycraft v. Hedden, Id. 512. And if the trust be surrendered, and her separate estate held with her general property, so that no means of distinguishing it is afforded to the court, a general decree will be made against her for the payment of the money due on the bond. Id. Bonds taken by a trustee under a decree, may be ordered to be assigned to those who are entitled to so much of the proceeds. Ex parte Boone, 2 Bland, 321, note; McMullin v. Burris, Id. 357, note. A bond taken by a creditor of an heir, will not operate as a relinquishment of such creditor's preference as against the estate descended. Hindman v. Clayton, 2 Bland, 337. note. An appeal bond, on the decree being affirmed, becomes thereby an additional security for the debt. Andrews v. Scotton, 2 Bland, 669. The surety on a forthcoming bond is not liable where the property levied on cannot be taken in execution. Long v. U. S. Bank, Freem. Ch. [Miss.] 375. The obligation of the surety is not that he will pay the debt, but that the property taken in execution shall be forthcoming. Id. The obligor of a bond by asking and procuring indulgence, payment of interest and other circumstances, held to have waived his equity, as against the assignee, to be relieved from the payment of the bond. Van Lew v. Parr. 2 Rich. Eq. 321. Where the condition of a penal bond has been submitted to a jury, under the act of 1792 [1 Stat. 275], the determination is final, and concludes the jurisdiction of the court of equity to relieve against the penalty. Henderson v. Mitchell, Bailey, Eq. 113.

construction of the import of the judge's charge, but consider it as expressing an opinion that, as matter of law, the liability of the sureties in the first bond ceased upon the giving of the second bond for all defaults thereafter incurred. If the circumstances in evidence were such as to warrant the conclusion, as matter of fact, that there was a waiver of the continued responsibility of the first sureties, it was for the jury. and not for the court, to weigh these circumstances, and draw conclusions from them; and I cannot but think the manner in which the case would have been submitted to the jury would have been very different, if the question had been considered by the court as a question of fact. That it was not so considered by the defendants' counsel, on the trial of the cause, is evident from the manner in which the bill of exceptions states the question to have been put to the court, viz.: the counsel for the defendants insisted to the court, that the taking of said last-mentioned bond by the postmaster-general was a waiver in law of all right to proceed on the first bond for postages received subsequent to the date of the second bond; that the sureties in the first bond ceased to be liable at and from that date for any defalcation or neglect of duty of the postmaster. No circumstances are referred to and relied upon from which a waiver could be inferred as matter of fact; but that the second bond was such waiver, resulted as a conclusion of law from the mere fact of accepting the bond. And I the more readily conclude that such was the understanding of the question upon the trial, as I cannot discover, from the bill of exceptions, any circumstances tending to warrant a conclusion of any waiver in point of fact.

How far mere parol evidence of a waiver would be admissible and available, is a point that does not arise here. The only question is, as to the legal operation of the second bond upon the liability of the sureties in the first; and I am unable to discover any principle upon which it can be considered as exonerating them from their responsibility. There is no limitation as to time in the bond, the breaches assigned and proved are within the condition of the bond, and Nott, the postmaster, continued in office under the same appointment originally given him. It certainly cannot be pretended that the taking of a second bond could, in any sense whatever, be considered a new appointment. The second bond does not purport to be a substitute for the first; nor is there anything tending to show that such was the intention or understanding of the parties; and it can be viewed in no other light than as additional security, to the taking of which no possible objection could exist—it was for the benefit and not to the prejudice of the first sureties. As to the defaults incurred before the taking of the sec-

ond bond, the defendants were alone responsible; and for those afterwards incurred, equity would probably consider the two sets of sureties as jointly responsible.

The second bond was not taken for any antecedent default, and was not, therefore, for any existing debt or claim; and if it had been, it would not have operated as a discharge or extinguishment of the first. A new security, of an equal or inferior degree. is not an extinguishment of a prior debt. This is a principle too familiar to require any authority in its support. The cases, however, here referred to, may serve to illustrate and show the extent and application of the principle. 8 Johns. 54; 11 Johns. 512; 13 Johns. 240; 14 Johns. 404; Cro. Car. 86; Cro. Eliz. 716, 727; 1 Burrows, 9. And these cases also show, that if the second bond had been plead as a discharge of the first, the plea would have been bad on demurrer. The omission of the postmaster-general to remove Nott from office, did not draw after it a discharge of the sureties. The doctrine of the supreme court, in the cases of U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720, and U. S. v. Van Zant, 11 Wheat. [24 U. S.] 184, is entirely applicable, and settles this question. Although it might have been the duty of the postmaster-general to remove Nott, yet his neglect did not operate as a removal; this provision is only directory to the postmaster-general, and intended for the security and protection of the government, by insuring punctuality and responsibility, but forms no part of the contract with the surety. So long as the officer remains in the legal exercise of the powers and duties of the office, the responsibilty of the sureties continues.

The case of U. S. v. Nicoll, 12 Wheat. [25 U. S.] 505, decided at the last term of the supreme court, has a strong bearing upon this case. In that case, an act of congress had required new sureties to be given by the officer, by a certain day therein mentioned. None were, however, given; and the responsibility of the old sureties was held to continue. The court say. the act nowhere directs the principals to be discharged from office, upon failure to give new sureties; and if the act had so directed, they would have remained in office until actually removed. The law does not in terms declare the existing sureties shall be discharged after that day; it would require a very strained construction of the statute to discharge them by implication, while their principals were permitted to remain in office. Such construction would be against the manifest intention of the legislature.

It was urged on the argument that the defendants were discharged from their responsibility, by reason of the increase of the rate of postages subsequent to their having become sureties, and acts of congress were referred to for the purpose of showing such increase. It is not perceived how this can be made a question here; it does not arise upon the bill

of exceptions, nor is it in any shape or manner whatever presented by the record. But was it properly before this court? It appears to me that it forms no objection to the right of recovery against the sureties. The undertaking of the sureties is general, that Nott shall pay over to the postmaster-general all moneys that shall come to his hand for the postages of whatever is by law chargeable with postage. It refers to no particular act explaining or limiting the rate of postage; and all moneys received as postage come as well within the letter as the spirit and intention of the bond. Nor was the bond taken under any particular law defining its extent and operation; and must, therefore, be construed according to the fair and reasonable import of the language employed by the parties. The undertaking of the sureties is, from its nature, prospective, and is limited only by the terms of the bond, that the money for which they are called upon to account, must have been received by their principal, as postages established by law. Had the acts of congress referred to, enlarged the powers of the postmaster, or superadded any new duties, whereby he was made the receiver of other moneys than for postages, the sureties in this bond would not have been responsible therefor. The defendants' counsel has supposed that the case of U. S. v. Kirkpatrick [supra], sustains this objection. But in this I think he is mistaken. The court then considered the bond in question to have been given in reference to the objects of a particular act of congress, and that the condition of the bond referred principally to assessment of direct taxes; and that the subsequent acts of congress laying internal duties, contained provisions enlarging the authority of the collectors; and that the sureties did not undertake for the faithful execution of such enlarged powers. The court say there is nothing in the original act under which the appointment was made, which contemplates a permanent and continuing liability for all duties under all laws which might be subsequently passed; that the condition of the bond, in its terms as expounded by the other parts of the act, had a principal reference to the assessment of direct taxes. But there is nothing in this case to warrant a conclusion, that if the subsequent acts of congress referred to, had simply increased this direct tax, the sureties would not have been held responsible.

Upon the whole. I think the district court erred, in the opinion given to the jury, as to the legal effect and operation of the second bond upon the liability of the sureties in the first.[4] The judgment must, accordingly, be reversed, and a venire de novo issued returnable in this court.

---

[4] As to effect of misdirection of the court upon point of law, see 2 Grah. & W. New Trials, p. 768 et seq.