## Case No. 11,311.

### POSTMASTER GENERAL v. REEDER.

[4 Wash. C. C. 678.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1827.

DEPUTY POSTMASTER GENERAL'S BOND—OMISSION TO SUE—DISCHARGE OF SURETY—GIVING NEW BOND — FRAUD ACTUAL AND CONSTRUCTIVE — PLEA IN BAR—SPECIAL DEMURRER.

1. The official bonds taken by the postmaster general from his deputies are valid, and the omission to bring suits on such bonds for the defaults of the principal in those bonds, does not discharge the sureties.

[Cited in U. S. v. Sowers, Case No. 16,363; U. S. v. Wright, Id. 16,776.]

2. A plea which professes to be in bar of the whole demand, and yet is so only to a part, is bad on special demurrer.

[Cited in Grafflin v. Jackson, 40 N. J. Law, 444.]

3. Fraud is actual or constructive. The definition of each. The former is generally a question of fact; the latter of law, after the facts are found.

4. The mere omission to bring suits on the official bond of the deputy postmaster, or to communicate his defaults to the sureties, is not, per se, evidence of fraud.

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

5. The giving a new official bond by the postmaster does not discharge his sureties under the old bond for the past or subsequent defaults of the principal.

[Cited in brief in Beyerle v. Hain, 61 Pa. St. 229.]

6. The order of the postmaster general to the postmaster, not to remit the money he may receive, but to retain it to answer his drafts, does not discharge the sureties.

7. If the defendant plead in bar a matter which is no defence at all, and it be found for him, still he cannot have judgment, but the court will give judgment for the plaintiff, non obstante veredicto; provided the defect in the plea is not in the form, but in the matter of it. If it be in the form, or can be made better by other pleadings, a repleader will be awarded. The rule is the same if the facts stated in a demurrer to evidence maintain such a plea. ·

[Error to the district court of the United States for the district of New Jersey.]

This cause was argued at the last session of the court, and was taken under advisement.

L. Q. C. Elmir, for plaintiff.

Mr. Wall and L. H. Stockton, for defendant.

WASHINGTON, Circuit Justice. This case comes before the court upon a writ of error to the district court. It was an action of debt, brought in that court in the name of the postmaster general of the United States against the defendant, as one of the sureties of Charles Rice, postmaster at Trenton. The bond bears date the 28th of November, 1803, and is in the penalty of $2000, with condition that the said Rice, who had been duly appointed postmaster at Trenton, should well and truly execute the duties of said office, and should faithfully, once in every three months, and oftener, if required, render accounts of his receipts and expenditures as postmaster to the general post office, in the manner and form which should be prescribed by the postmaster general, in his several instructions to postmasters, and should pay all moneys that should come to his hands for postage of whatever is by law chargeable with postage, to the postmaster general of the United States for the time being, deducting only the commissions and allowances made by law for his care and trouble and charges in managing the said office. The breach assigned in the declaration is, that the said Rice had received as postmaster, from the date of the bond to the 2d of April, 1821, postages for such things as during that time were chargeable with postage, after deducting his commissions, &c. the sum of $2559.63, which he had neglected and refused to pay to the postmaster general of the United States for the time being, and still refuses, &c.

To this declaration there are ten distinct pleas in bar filed. To the first, third, and sixth pleas, and to the rejoinder to the replication to the second plea, there are general demurrers, and to the eighth plea, there is a special demurrer. The questions present-

ed by the general demurrers were stated and considered by the counsel as being: (1) Whether the postmaster general had authority to take the bond upon which this action is brought; and whether the same is valid in law, upon which an action can be maintained in the courts of the United States? (2) Whether the omission of the postmaster general to cause suits to be commenced against Rice at the periods prescribed by law, for his defaults in not paying over the balances due at the end of every three months, and the consequent injury alleged to have resulted to the defendant, as his surety, on account of the subsequent insolvency of his principal, discharged the defendant from his liability upon his bond.

1. The first question was decided at the last session of the supreme court of the United States, in the case of Postmaster General of United States v. Early, 12 Wheat. [25 U. S.] 136, which turned upon the validity of these official bonds, and upon the jurisdiction of the circuit courts of the United States to take cognizance of actions brought upon them in the name of the postmaster general of the United States. The decision of the court fully established the validity of those bonds, as well as the jurisdiction of the court; and is therefore conclusive as to this question.

2. The principles decided by that court in the case of U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720; and in that of U. S. v. Vanzandt, 11 Wheat. [24 U. S.] 184, apply strictly to the second question, and must govern it. The first was an action upon the bond of a collector of direct taxes and internal duties against his surety, and the latter upon a paymaster's bond against his surety. In the former, it was contended that the surety was discharged in consequence of the neglect of the comptroller of the treasury to pursue the remedy which the law authorised and required him to do against the collector, upon his failing to render his accounts, or to pay over quarterly the moneys by him collected. The same argument was urged in the latter case, upon the ground of laches in not recalling the paymaster upon his failure to render his vouchers to the paymaster general for settlement of his accounts, for more than six months after his having received funds. In both cases it was decided, that the neglect imputed to the comptroller in the one, and to the paymaster general in the other case, did not discharge the sureties. It is true, that in those cases, the suits were in the name of the United States, and in this, the postmaster general is the plaintiff; but that can make no difference whatever, since, according to the decision in the before mentioned case (Postmaster General of United States v. Early [supra]), the United States are as much the real parties in this case, as they were in the two which have been mentioned. Neither can the personal liability of the postmaster general to pay the balances

due by his deputies, which is fixed upon him by the acts of congress as a penalty for his neglect to cause suits to be commenced against these deputies for such balances, distinguish this from the above cases; since that liability cannot operate to discharge either the postmaster or his sureties, from the obligation, but is provided by law merely as an additional security of the United States. As to the special demurrer to the eighth plea, the court below was perfectly correct in deciding the plea to be insufficient. It professes to be in bar of the whole demand, and yet avers payment of only such of the postages as came to the hands of the postmaster prior to the 26th of March, 1819, and makes no answer to those which were received between that period and the 2d of March, 1821, when the postmaster was removed from office, although the breach in the declaration covers the receipts during the whole period. See 1 Chit. Pl. 509.

The questions arising out of the issues in fact upon the fourth and fifth pleas, are, whether the omissions of the postmaster general to cause suits to be commenced against Rice for the balances in his hands, were fraudulent or not, in point of fact, and whether he fraudulently concealed from the defendant the defaults of his principal. The seventh plea, upon which an issue in fact was also taken, alleges that Rice did, on the 2d of March, 1821, pay to the postmaster general of the United States all the moneys that came to his hands for postages, &c. (following the terms of his condition), during the period that the defendant was his surety. The ninth plea is substantially as follows, viz. "that the plaintiff ought not to have, or maintain his said action as to so much of the moneys as came to the hands of Rice for postages, &c. after the 26th of March, 1819, or for any arrearages or defaults after that time; because, he says, that, on the 2d of May, 1818, the postmaster general of the United States, by letter of that date, required of the said Rice a renewal of his bond as postmaster at Trenton, and the said Rice, in pursuance thereof, did, on the 26th of March, 1819, together with two persons by name, as his sureties, execute a bond to the postmaster general of the United States of America, in the sum of $2500, with the condition that Rice should well and truly execute the duties of postmaster at Trenton, and should once in every three months, or oftener if required, render accounts, &c. (following the condition of the old bond,) and should also do and perform, as agent for the general post office, such acts as might be required of him by the postmaster general of the United States, and faithfully account with him for all moneys, bills, &c. which, as agent aforesaid, he should receive for the use of the general post office, which said bond was executed by said Rice, and his sureties, as a renewal of the postmaster's bond of said Rice, in conformity with said request; and avers

that the postmaster general of the United States on the said 26th of March, 1819, did receive the said bond as a renewal of the postmaster's bond of said Rice, and the same still remains in force, &c. and this he is ready to verify, &c. and prays judgment if plaintiff ought to have, &c. his action, &c. for moneys that came to the hands of Rice for postages, &c. after the said 26th of March, 1819, or for any arrears or defaults of said Rice after that time. To this plea, the plaintiff replied, that the postmaster general of the United States did not, on the said 26th of March, 1819, or at any other time, accept and receive the writing obligatory in the plea mentioned as a renewal of said Rice's bond as postmaster at Trenton, as stated in said plea, on which replication issue was taken. The tenth plea states in substance that, after the making of the bond in the declaration mentioned, viz. on the 1st of April, 1810, the postmaster general of the United States, without the defendant's knowledge, did, by a letter to Rice of that date, direct him not to pay to the postmaster general of the United States whatever monies came or should come to his hands for postages, &c. but to retain the same, and to pay it from time to time to the order of the postmaster general of the United States; contrary to the condition of the said bond, and to the provisions of the act of congress; and avers that the postmaster general of the United States did not draw orders on the said Rice, for the balances which remained in his hands for postages aforesaid, at the end of every three months, but wilfully suffered them to accumulate and remain in his hands to the prejudice of the defendants, insomuch as said Rice has become insolvent since said directions, &c. whereby the defendant was discharged from his liability, &c. On this plea an issue was taken.

Upon the trial of the above five issues in fact, the defendant gave in evidence, that Rice was a man of fair character, and in good credit for many years prior to his insolvency and removal from office in March, 1821. That Rice remitted to the postmaster general the balances due the two first quarters after his appointment, and that before the end of the third quarter, he received a letter from the postmaster general which directed him, in future, to keep the balances in his hands until he should draw for them, for the purpose of paying the cross mails, and to avoid the danger which attended the making of remittances in money by mail; in consequence of which letter, the said Rice remitted no more monies to the post office department, nor was he afterwards requested to do so. That two drafts were afterwards made upon him which he did not pay in consequence of one of them being drawn for too much, and the holder of the other refusing to allow the usual days of grace. That he paid a third draft for $1100, and deposited in one of the banks in Philadelphia, another

sum to the amount of $1000 to the credit of the postmaster general, and was ordered by that officer, in October, 1820, to pay all the balances due by him in future into the bank of the United States. That Rice renewed his bond on the 26th of March, 1819, and transmitted it, as he was directed, to the general post office department, in the same year, which renewal was given in consequence of a letter from that department requiring the same to be done, and indorsing a blank bond for the purpose to be filled up with the names of the sureties, and the date when executed. The letter states, that from various causes it appeared proper to request a renewal of all postmasters' bonds which had been made three years or more. The bond, which is set out in the record, corresponds with that stated in the ninth plea. The defendant further gave in evidence the account of Rice with the general post office, making a balance against him on the 25th of March, 1819, of $2737.74, and on the 2d of March, 1821, when he was removed from office, a balance of $2559.63; and also receipts for payments by him on postages between those periods, exclusive of his commissions, &c. to the amount of more than the balance due by him at the first mentioned period.

Upon a demurrer to this evidence, which was joined by the defendant, the district court gave judgment that the defendant had not shown in evidence sufficient matter to maintain the issues upon the matters contained in the replications to the fourth, fifth, and seventh pleas, and that he has shown in evidence sufficient matter to maintain the issues on the matters contained in the replications to the ninth and tenth pleas, "but since it seems to the court that the matters contained in the said ninth and tenth pleas are not sufficient in law to bar the plaintiff, the plaintiff ought to recover his debt aforesaid and damages." A venire was accordingly awarded for a jury to inquire of the truth of the breaches of said bond in the declaration alleged, and to assess the damages. A jury being accordingly impannelled to inquire, &c. and to assess, &c. found that the plaintiff had sustained damage by breach of the condition of the bond, besides costs and charges of suit, to the amount of $2000, for which, and also for the costs, &c. judgment was entered for the plaintiff. The two questions raised by the issues on the fourth and fifth pleas may be considered together; as they both turn upon the allegations of fraud which constitutes the gist of those issues. The counsel for the plaintiff has candidly admitted that, as the demurring party, he stands exposed to every conclusion of fact which the jury might fairly have drawn from the evidence stated in the demurrer, which conduced to prove the charge of fraud averred in the pleas. Fraud is either actual, or such as is so considered in law; and is termed legal or constructive. The former always implies design in the party charged with it to deceive, or to overreach

another to his injury, by false suggestions, or by suppression of facts, the disclosure of which he knows or believes to be material. The latter may consist with perfect moral rectitude, and derives its character from the nature and consequences of the act in relation to others, independent of any moral turpitude in the person doing the act. Thus the concealment of a fact from an underwriter, which is known by the assured, and not by the underwriter, and which the former believes to be material to the risk, would be of the former description. But if not known, or believed by him to be material, still if the law consider it to be so, the concealment would avoid the policy upon the ground of what the law construes to be a fraud. Generally speaking, actual or moral fraud, depending always upon the mind of the person practising it, is a question of fact, and proper for the decision of the jury. Constructive fraud, on the other hand, is always a question of law, after the facts are agreed, or are found by the jury.

Now, what part of the evidence is it which in this case conduces to prove any fact from which the jury could fairly have inferred a fraudulent omission in the postmaster general to do his duty, on a fraudulent concealment from the defendant, either actual or constructive? The only facts which the evidence conduces to prove are, that Rice was a man of fair character, and in good credit, and regularly, at the end of every three months, reported to the general post office department his accounts of monies received and disbursed by him. That he remitted the balances due by him to that department, until he was directed to retain them in his hands to answer the drafts which might be made upon him; and that those drafts, when they were made, were always paid, except in two instances. Nevertheless, the balances as they became due were not drawn for, or demanded, so that he was generally in arrear up to the time of his dismission, when his debt amounted to the sum sought to be recovered in this action. Let it be admitted that the jury might, from this evidence, have inferred that the postmaster general had been misled by the good character and credit of Rice to practice a forbearance towards him beyond what his duty to the public, and his legal obligations, warranted; yet it surely would not follow that they could, with propriety, have concluded from those facts, and without other evidence, from which to judge of the motives which influenced the conduct of that officer, that this forbearance was induced by a fraudulent design to deceive and to injure either the defendant or the government. The comptroller in one of the cases before alluded to, disobeyed the injunctions of law, in not instituting against the collector the proceedings which the acts of congress had provided for the defaults of that officer; and the paymaster general equally violated his duty, by not recalling the delinquent paymaster in the other case. A loss to the public, and an injury to the sureties, resulted from those omissions in both cases. Yet it never entered into the mind of the supreme court, or even of the counsel who argued those causes, that those omissions were necessarily characterised by fraud, actual or legal. So far from it, the inference of fraud from the mere laches of a public officer is entirely repudiated by the principles laid down by the court in those cases, and upon which they were decided. Those principles are, that laches in a public agent are not imputable to the government, and that mere laches, "unaccompanied with fraud," (showing that laches do not, per se, imply fraud) form no discharge of a contract of the nature of that under consideration, even between private individuals.

Upon the subject of fraudulent concealment from the defendant of the defaults of his principal, it cannot be pretended that even negligence or breach of public duty, much less fraud, is imputable to the postmaster general; since he was not required, either by the law of the land, or by the dictates of morality, to communicate those defaults to the sureties. When they entered into this contract they trusted in the integrity and fidelity of their principal, and he was, in all fairness, bound, at all times, to satisfy their inquiries in relation to his official conduct. What might have been the legal consequence of a refusal by the postmaster general to afford information to the sureties upon this subject, in case it had been asked for; or to institute suits against the postmaster for his defaults, if this had been demanded; need not be decided in this case; since there is no evidence tending to prove that such request or demand had ever been made by the defendant, or by his co-surety. I conclude, therefore, that the court below was correct, in deciding that the issues upon the fourth and fifth pleas were not supported by the evidence stated in the demurrer. That court was equally correct in giving a similar decision as to the issue on the seventh plea, the demurrer to evidence stating, that on the 2d of March, 1821, when Rice was dismissed from office, there was a balance of $2559.63, due by him for postages for which he was liable.

The question growing out of the defence made by the ninth plea is, whether the responsibility of the defendant, as surety, ceased on the 26th of March, 1819, when a new official bond was given by the postmaster? Upon the demurrer to evidence, I must say, as the court below has decided, that the evidence fully supports the issue on the part of the defendant on this plea, as well as the issue on his part on the tenth plea. But the question to be decided is, whether, admitting the truth of the plea, in matter of fact, it forms any legal defence to this action? It was insisted by the defendant's counsel, that the demand and acceptance by the postmaster general of the new bond executed by Rice, terminated the responsibility of his sureties in the first bond. But no prin-

ciple of law, much less was any authority referred to to countenance this position. It cannot be maintained upon the ground of satisfaction, because it is well settled that the acceptance of one bond, although in satisfaction of another, cannot be plead in bar to an action upon the first. Maynard v. Crick, Cro. Car. 86; Cro. Eliz. 716, 727; 1 Burrows, 9. Besides, if the new bond could be considered as a satisfaction of the first, it would amount to a discharge of the defendant, not merely from his future responsibility, but from any responsibility incurred, and existing at the time the new bond was given; which is more than the counsel for the defendant contends for; and is, besides, a different defence from that made by the plea. Nor can the acceptance of the new bond be a defence to the action, upon the ground of its giving time to the principal, or changing the contract of the surety without his consent; since the condition of the two bonds, so far as it respects the duties of the principal, as postmaster, are precisely the same; and the addition of new stipulations, which are clearly not obligatory on the sureties in the old bond, cannot be said to vary the terms of their contract, particularly when the new bond was given after a forfeiture under the old had been incurred. And even if such could be the operation of the new bond, it would be to discharge the surety altogether; which is not contended for in argument, nor is that the matter insisted upon by the plea. In short, I can imagine no legal principle upon which this defence can be maintained, unless it could be made out that the demand and acceptance of the new bond operated virtually to terminate the commission under which the postmaster had theretofore acted; co-extensive with which I hold the guaranty of his sureties to have been. But I am acquainted with no authority or principle of law which can render a new official bond, either identical in form with a former bond, or which superadds to it new duties, equivalent to a new commission, the two things being in themselves totally distinct in their nature, operation, and design. If the commission of Rice terminated on the 26th of March, 1819, he ceased from that day to be postmaster; unless a new commission was granted to him which is not alleged in the plea. A new commission might possibly be considered as terminating the old one, if clearly so intended, without a formal removal of the party from his office; but a new official bond, with new sureties, cannot possibly produce this effect. But I do not consider this point as being altogether new, and now to be decided for the first time; the principle upon which it rests having been decided, as I conceive, in the case of U. S. v. Nicoll. 12 Wheat. [25 U. S.] 505. The suit in that case was brought against the surety of Swartwout, on an official bond given by Swartwout, as navy agent, with the usual condition annexed. The breach laid in the declaration was, that Swartwout's accounts had been settled by the proper accounting officers, upon which settlement a large balance was found against him which he had refused to pay. The bond bore date on the 22d of February, 1819, and one of the questions which arose in the cause was, whether the defendant, the surety, was, or was not responsible for any defalcation that took place on the part of Swartwout as navy agent, subsequent to the 30th of September, 1820, when, by the act of congress of the 15th of May, 1820 [3 Stat. 582], new sureties were required to be given by the said Swartwout?

The supreme court decided that the design of the above act in requiring new sureties to be given by the 30th of September, 1820, was to put it in the power of the treasury department to pursue the speedy remedy provided by the act against the principal and his sureties in the new bond, if it should be deemed necessary to do so. "But," says the court, "the act no where directs the principals to be discharged from office upon failure to give new sureties; and if the act had so directed, they would have remained in office until they were actually removed. The law does not in terms declare that the existing sureties shall be discharged from and after the 30th of September, 1820; and it would require a very constrained construction of the statute to discharge them by implication, while their principals were permitted to remain in office." This opinion clearly establishes the two following principles. 1. That the giving of new sureties does not amount to a discharge of the principal from office, or of his sureties from future responsibility for his acts; unless the law which requires the taking of new sureties, declares, in terms, or by just construction, that they shall be so discharged. And 2. That the liability of the sureties continues, as long as the principal continues in office under the appointment or commission which placed him in office at the time the bond was given, and until its legal termination. I am, therefore, of opinion that the acceptance of the new bond is no defence whatever to this action, and that the liability of the defendant, as surety for Rice, continued until the latter was removed from office.

I feel no difficulty whatever as to the defence set up by the tenth plea. The condition of the bond is not that the postmaster shall pay the balances due by him to the postmaster general, at any particular place, or time, or in any particular manner. It is, that he shall account every three months, &c. and shall pay over all moneys that shall come to his hands for postages, (after making certain deductions,) to the postmaster general. The law which requires the postmaster general to cause suits to be brought against his deputies for their defaults in not paying over the balances in their hands at the end of every three months, is merely directory to him, and it is at his peril if he grants indulgences after such faults have been committed. But no part of the post office law forbids the postmaster general to require payment of those balances at the place where the postmaster resides, or else-

where, according to the orders which the former may give for that purpose. It has been seen that the forbearance of the postmaster general to demand payment for any length of time does not, per se, discharge the sureties of the deputy. Even an agreement to give him time to pay will not produce that effect, unless it was founded on such a consideration as would prevent the postmaster general from demanding payment in the mean time. M'Lemore v. Powel, Foster & Co., 12 Wheat. [25 U. S.] 554. The direction of the postmaster general to his deputy produced no change of the contract into which the defendant had entered; nor did it, for one moment, prevent the former from insisting upon the payment of any balance in the hands of the latter, or rrom causing a suit to be brought to recover it. The direction therefore did not discharge the defendant as surety, and is no defence whatever to this action. But since the court must say, upon the demurrer to evidence, that the matter of the ninth and of the tenth pleas ought to have been found by the jury as true, in point of fact, upon the evidence, and must therefore be assumed as true by the court; the question is, and I admit the difficulty of it, what judgment ought the court to give in such a case?

Suppose the jury had found specially the facts which the evidence stated in the demurrer would have warranted, or had found for the defendant on the ninth and tenth pleas; what judgment ought the court to have given on them? The difficulty which this question presents is, whether, in such a case, a repleader should be awarded, or whether the court ought to render a judgment for the plaintiff upon those pleas, non obstante veredicto; it being an undisputed principle of law that, if the defendant plead in bar, a matter which, in point of law, is no defence at all, judgment cannot be rendered for him upon the verdict, although it be in his favour, or if rendered for him, it will be reversed on a writ of error. I shall not prolong this opinion by a particular examination of the various cases which have been decided upon this subject (Lacy v. Reynolds, Cro. Eliz. 214; Cro. Eliz. 227; Wilkes v. Broadbent, 1 Wils. 63; Willis, 360; 2 Strange, 1124; Carth. 370; 2 Strange, 873; Rex v. Philips, 1 Burrows, 292; 1 Strange, 394; 2 Strange, 994; 1 Ld. Raym. 390; 6 Mod.; 2 Ld. Raym. 922; 1 Salk. 173; 1 Ld. Raym. 90; Cro. Car. 25; Cro. Jac. 442; 1 Term R. 11S; 2 Term R. 75S; 2 Tidd, Prac. 831; 2 Saund. note 6, p. 319), but shall content myself with observing that, after the most careful consideration of these cases, I am satisfied that they fully warrant the conclusion to which Chitty has come in his treatise on Pleading (volume 2, p. 634). "The distinction," observes this learned author, "between a repleader and a judgment, non obstante veredicto, is this—that where the plea is good in form, though not in fact, or in other words, if it contain a defective title or

ground of defence, by which it is apparent to the court, upon the defendant's own showing, that in any way of putting it he can have no merits, and the issue joined thereon be found for him, there, as the awarding of a repleader could not mend the case, the court, for the sake of the plaintiff, will at once give judgment non obstante veredicto; but where the defect is not so much in the title as in the manner of stating it, and the issue joined thereon is immaterial, so that the court know not for whom to give judgment, whether for plaintiff or defendant; there, for their own sakes, they will award a repleader. A judgment, therefore, non obstante veredicto, is always upon the merits; and is never granted but in a very clear case; a repleader is upon the form and manner of pleading."

The reasons here assigned for the distinction we are considering, and the good sense in which they are founded, must be obvious at once, and they seem to be fully supported by the cases in which the distinction has been taken. For why order a repleader, when it is evident to the court that the vice of the plea is inherent to the matter of the defence, and is in no respect chargeable upon the form in which it is presented? If, in point of form, the case cannot be made better by further pleading, the objection to the plea cannot be removed, but must continue to be attached to it in any and every shape which can be given to it, and consequently the order to replead would, to say the least of it, be an idle and a vain thing. The defences growing out of the ninth and tenth pleas are to be taken as true in fact, and no exception has been or can be taken to the form in which they are pleaded; but, in point of law, they constitute no defence at all, and are altogether immaterial. No useful purpose, then, could be answered by awarding a repleader. It must be acknowledged that most of the cases to be met with upon this subject are cases of trespass, replevin, informations in nature of a quo warranto, or others, in which the plea was considered as amounting to a confession of the cause of action, and attempted to avoid it by an insufficient justification, and, in those cases, the judgment would seem to have been entered upon the confession. In Carth. 370, we have the form of the judgment in one of those cases. It is observable, nevertheless, that in no case is it laid down that the confession of the cause of action must be direct, in order to warrant the judgment being entered for the plaintiff. In many of them it is not so; and in some, it is a mere inference from the plea, not denying it, but attempting to avoid it, by setting up some new matter as a defence against it. And I understand the general rule of law upon this point to be, that every plea which does not deny the cause of action stated in the declaration, or allege sufficient matter in point of law to bar the action; does, in effect, and

by a necessary implication, admit, not only the facts so alleged, but the whole cause of action; and if the declaration contains a good cause of action, judgment must be for the plaintiff, although the truth of the matters stated in the plea be proved on an issue in fact, or be so found by a jury. This I take to be the substantial principle which runs through all the cases, although it would seem, at first view, from the circumstances, that in most of them, the confession is, in some measure, direct, as if something more than an implied admission of the cause of action was meant; whereas nothing more would seem to have been intended by the court, than that the plea amounted, in point of law, to a confession of the cause of action.

The following cases go far to show that the above inference is by no means unauthorised. Comyns, in his Digest (volume 5, p. 518), letter S, tit. "Verdict," after laying down the general principle, that the jury ought not to inquire of a thing which is agreed by the parties to the issue, exemplifies it by stating, that if, in an action of waste, on A. the defendant plead no such ville as A, the jury cannot inquire whether any waste was committed, or whether the plaintiff had any land in A, for that is confessed by the plea. He cites 2 Rolle, 691. In the case of Burdick v. Green, 18 Johns. 14, which was an action of assumpsit, one of the pleas relied upon a discharge under an insolvent law, passed after the making of the contract; which it was agreed would have been bad on a demurrer. But the plaintiff replied fraud, upon which issue was taken and found for the defendant. The court was of opinion, that the replication admitted the discharge; yet, as the plea, though true, contained no ground of defence, judgment was rendered for the plaintiff on that point, non obstante veredicto. Now, in this case, as well as in the preceding one, the plea contains no direct confession of the cause of action, but it is inferred from its setting up new matter in avoidance of the action, instead of traversing the material facts laid in the declaration. In the case of Jackson v. Stetson, 15 Mass. 54, it is laid down that the plea of tender, joined to a plea of non assumpsit, or non est factum, does not expressly confess the making of the promise, or the execution of the deed; but yet it is considered as an implied admission of the fact, so that the defendant can never have a judgment in his favour on the ground that he did not make the promise, or give the bond. The last of this class of cases which I shall notice, is that of O'Keefe v. Dunn, 6 Taunt. 305, which was an action brought by the indorser of a bill of exchange, drawn at one month after date, against the drawers. The defendants pleaded, that before the indorsement to the plaintiff, and presentment by her for acceptance, the bill was presented by the payee for acceptance, and refused, and that the defendants had no no-

tice given them of such refusal. After verdict for the defendant, on the issue joined on a traverse of that plea, a rule nisi was obtained to enter up judgment for the plaintiff, non obstante veredicto; upon the ground that the plea averring no notice to the defendant of the first dishonour of the bill, was insufficient in law. The rule was made absolute for the reasons assigned for asking it, the court being of opinion that the objection of want of notice could not be made as against the plaintiff, a purchaser of the bill for valuable consideration, and without notice of its previous dishonour. In this case too, it may be observed, that the plea contained no direct confession of any thing. If then a verdict had been found, in the present case, for the defendant, I should have thought that the plaintiff would have been entitled to judgment, non obstante veredicto. This is a demurrer to evidence; but it is quite clear, that, in principle, there can be no difference between that and the present case, except as to the form of judgment. In the one, the jury finds the issue for the defendant; and in the other, the court declares the issue to be in his favour, if the evidence conduces to prove it so that the jury might justly have inferred it. But in both, the cause of action being confessed or admitted, and not being avoided by any legal defence, the plaintiff is entitled to judgment. Whether the judgment should, in strictness, be entered upon the confession, or upon the insufficiency of the defence set up by the plea, may possibly admit of some doubt. From a view of the cases on this point, it would seem as if it had been entered both ways; but, although the former should be considered as the best mode, the difference is merely formal, and can afford no sufficient reason for reversing this judgment on that ground.

There is, upon the whole, no error in the judgment of the district court, and the same must therefore be affirmed, with costs.