Tennessee Hospital v. Fuqua.

TENNESSEE HOSPITAL AND W. G. FISHER v. J. G.
FUQUA et als.

GUARDIANS. *The order of liability of sureties.* Under the provisions of the
Code, the renewal bonds of a guardian are cumulative as to the ward,
but the sureties on the several bonds are liable, as between them-
selves, in the inverse order in which the bonds are executed.

FROM ROBERTSON.

Appeal from the Chancery Court at Springfield.
H. H. LURTON, Ch.

GARNER & GARNER for complainants.

JUDD & HICKS for defendants.

COOPER, J., delivered the opinion of the court.

On the 7th of August, 1865, J. G. Fuqua was
appointed and qualified as the guardian of W. N.
Fisher, a person of unsound mind. On the 6th day
of November, 1871, he renewed his bond, with J. G.
Woodard and B. H. Boone as his sureties. On the
3d of February, 1874, he again renewed his bond,
with D. L. Dunet as his surety. This bill was filed
on the 6th day of August, 1875, to hold him and
his sureties on both bonds liable for the estate of his
ward.

By the Code, sec. 3687, the guardian of an idiot
or lunatic is required to give bond and account as
other guardians. By sec. 2494, other guardians must
give bond, with sureties, for the faithful discharge of

their duty, which condition shall include every default which a guardian can commit in his office. By sec. 2499, every guardian, at the time of exhibiting his biennial statement of the ward's estate, shall renew his bond in a penalty of double the value of the estate, with the same conditions as the original bond.

It is conceded that this provision was brought into the Code from the act of 1842, ch. 117—an act construed by this court in *Jamison* v. *Cosby*, 11 Hum., 273. It was there held 'that, as to the ward, the renewed bonds are cumulative of the previous bond, the securities in each being equally liable for every default the guardian may commit during his term of office. This holding was in accord with the authorities. *United States* v. *Nicholl*, 12 Wheat, 505; *Postmaster General* v. *Reeder*, 4 Wash. C. C., 678; *Postmaster General* v. *Munger*, 2 Paine, 189; *Foye* v. *Bell*, 1 D. & B., 475; *Steele* v. *Reese*, 6 Yer., 263. The same decision has been made under the provisions of the Code. *State* v. *Parker*, Com. Rep., July 5, 1876. It is conceded, therefore, that the sureties on both of the bonds in this case are liable to the ward for the full amount of the guardian's defalcation.

The controversy is over the question of the liability of the sureties as between themselves. The sureties in the first bond insist that the second bond was given, upon their application, under the Code, secs. 3673, 3675. The Clerk of the County Court does prove that he issued a notice, signed by him, to the guardian to renew his bond, at the instance of those sureties. But there is nothing to show that

the guardian supposed that it was anything more than the usual notice to give a renewed biennial bond under the Code, sec. 2499, and the entry on the minutes of the County Court shows a simple renewal. The defense is, therefore, not sustained, according to the ruling of this court in *Johnson* v. *Johnson,* 6 Heis., 240, and its ruling in *Hickerson* v. *Price,* 2 Heis., 623, on a similar provision touching the sureties of public officers, under the Code, sec. 788.

The provision of the Code, sec. 3678, touching contribution between sureties on different bonds, relates to sureties on bonds given under the next preceding sections; for, if only a part of the sureties apply for a new bond, the old one remains in force as to the other sureties not applying, both as to prior and subsequent defaults, and may be binding on the sureties released to the extent of past defaults. The bonds, although separate, are in fact one as to all the sureties bound at the time of default. The Code, secs. 784, 793, contains analogous provisions. They have clearly no bearing on the case before us.

By the act of 1842, ch. 117, it was provided that the surety on a renewed guardian bond "shall be bound in the first instance" for the property of the ward. Under this act, the court held that the sureties on the last bond taken were first liable, and so in the inverse order in which the bonds were taken. In bringing the act forward into the Code, the words quoted were omitted. The statute, as it now stands, contains no provision as to the order of liability of the several sets of sureties. Ordinarily, the repeal of

an existing statute and the re-enacting it in different language, would raise a fair inference of a change in the legislative intent, and justify the reconsideration of previous rulings with a view to the new intent. But the declared object of the Legislature in the appointment of the revisers, whose work is embodied in the Code, was, in the language of its resolution, "to revise and digest" the existing statutes, not to alter them. And this court has accordingly, in view of this fact, said that one general rule in relation to the construction of the Code is, "that in doubtful cases it will be presumed that it was not intended to change, but only to revise or compile the old statutes." *Bates* v. *Sullivan*, 3 Head, 633. It is obvious that the omission of a clause in the redaction of a statute into a compilation might be inadvertent, and no great stress can be laid on the fact.

The question, therefore, is, what effect does the statutory renewal of official bonds have on the relative rights of the sureties on the several bonds?

Undoubtedly, the general rule of equity is, as settled by the leading case of *Dering* v. *Earl of Winchelsea*, 1 Cox, 318; 2 Bos. & P., 270, that where sureties are bound for the same principal and the same engagement, though by different instruments, they shall contribute to the common loss in the proportion of their respective liabilities. The right is, it is said, founded on general principles of equity, not upon contract, and therefore substance, not form, must be looked to, and the equity may be rebutted by proof, even in parol, or by circumstances. *Craythorne* v. *Swinburne*,

14 Ves., 160; *Stirling* v. *Forester*, 3 Bligh, 59; *Swain* v. *Wall*, 1 Rep. Ch., 80; *Macey* v. *Childress*, 2 Tenn. Ch., 447. Although the sureties are bound for the same principal, and the same liability, yet it may be shown that one was collateral to the other, as was done in *Craythorne* v. *Swinburne*. So, if one set of sureties be substituted for the other, there can be clearly no contribution, although the sureties are bound for the same engagement and the same principal. *Steele* v. *Reese*, 6 Yer., 263; *Hutchins* v. *McCauley*, 2 D. & B. Eq., 399. And this even where the substitution is by statutory requirement. *United States* v. *Wardwell*, 5 Mas., 82. So it was held, at an early day, that where a principal debtor has been sued and given bail for the debt, and judgment is recovered against the bail, the latter has no recourse on the original surety, but, on the contrary, the surety, if he pay the debt, is entitled to an assignment of the judgment against bail. *Parsons* v. *Briddock*, 2 Vern., 608. The principle of this ruling was approved by Sir Wm. Grant in *Wright* v. *Morley*, 11 Ves., 22, and has been adopted in this State in the adjustment of the relative rights of a surety, at the instance of the principal, for the stay of execution, or for appeal, and the original surety. *Chaffin* v. *Campbell*, 4 Sneed, 184; *Coles* v. *Anderson*, 8 Hum., 489. It is evident, therefore, that the mere fact that the sureties are bound for the same principal and the same engagement, is not conclusive of the question.

If the obligations are given from time to time for the performance of the same official duty, and for the

same official term, the general rule of contribution has been usually held to apply. *Odom* v. *Owen*, 2 Baxt., 446; *Bell* v. *Jasper*, 2 Ire. Eq., 597. If, however, the new or cumulative bond has been given under the requirements of a statute, the result has been made to turn upon the language of the statute, or the intent of the Legislature. Thus, in the *United Slates* v. *Wardwell*, 5 Mas., 82, a purser in the navy gave a new bond in compliance with an act of Congress requiring every purser then in service, instead of the bond required by the act under which they were appointed, to enter into a bond with a larger penalty, Mr. Justice Story held that the old sureties were released. So, in *Jones* v. *Hays*, 3 Ire. Eq., 502, Chief Justice Ruffin, where it was made the duty of guardians to renew their bonds every three years "*during their continuance* of the guardianship," laid great stress upon the words quoted as bringing the sureties within the general rule.

Obviously, therefore, the language of the Code, and the general intent disclosed upon the face of the provisions relating to the renewal of guardian bonds, must control our conclusion on the point under consideration. By the Code, sec. 2524, every guardian is required to make a new statement of the property of the ward at the time of the biennial renewal of his bond. By sec. 2499, the new bond is required to be in a penalty of double the value of the ward's estate. By sec. 2500, it is made the duty of the court to remove the guardian and appoint another in his place, should he fail to renew his bond. The

main object of these provisions, no doubt, was to secure the ward's estate, and this object would be compatible with leaving the general rule in force as to the contribution between sureties. But it is easy to see that the Legislature may also have had in view another object—the protection of the sureties themselves, by letting them know, biennially, the extent of their liability, and giving them the option of becoming primarily or secondarily liable. We know that the latter was one of the objects of the Legislature by the express language of the act of 1842. And if we concede that the omission of that language in the Code was the act of the revisers, not of the Legislature, the object still remains prominent. Considering the provisions, moreover, as altogether *de novo*, they may well be taken, to use the language of Peck, J., in *Steele* v. *Reese*, 6 Yer., 266, "as having made a new committal of the estate in the hands of the guardian" at each renewal. The county courts of the State have put this construction upon the law by requiring the guardian to again qualify whenever he renews his bond. Each of the entries made upon the execution of a new bond in the case before us concludes thus: "and he qualified in open court." The contrary intent is not so conspicuous as to require a change of practice, and while we are certain that the construction in question is in consonance with the policy of the law, we are also of opinion that it is sustained by sound statutory exegesis.

I learn from Judge Turney that this court has heretofore arrived at the same conclusion in an opin-

ion delivered by himself, though he has not been able to recall the name of the case. And in *The State* v. *Parker*, already cited, Judge Lea takes for granted that such was then the opinion of the court, by saying that the court could not only render a decree against the sureties on the different bonds, but declare the order of their liability.

The surety on the last bond will be declared to be primarily liable as between him and the sureties on the previous bond. The costs of this court and of the court below will be paid equally by all the sureties, the point of controversy being one of grave doubt, and the sureties may take a decree over against their principal therefor.